795 So.2d 79 (2000)
Charlie ABOUDRAAH and Micheline Chahda, Appellants,
v.
TARTUS GROUP, INC., etc., et al., Appellees.
No. 5D99-2086.
District Court of Appeal of Florida, Fifth District.
August 18, 2000.
As Corrected December 4, 2000.
Opinion Granting Rehearing In Part December 8, 2000.
*80 Robert N. Reynolds of Robert N. Reynolds, P.A., Winter Park, for Appellants.
Shannon L. Akins of Dietz & Sanders, P.A., Orlando, for Appellees.
COBB, J.
This is an appeal from an order denying a motion to vacate a default final judgment.
This case arose on June 29, 1998, when Carlos Malagon filed a complaint against Tartus Group, Inc. (Tartus), an administratively dissolved corporation, Micheline Chahda, Susan Stewart and Joseph Begalla, individually as last known directors of the corporation, and Charlie Aboudraah, individually, to enforce the terms of a note. Malagon alleged that he gave Aboudraah a check for $200,000, made payable to the Tartus Group, Inc., in consideration for a promissory note.
Aboudraah was served on August 18, 1998 by service on Micheline Chahda, his ex-wife, with whom he allegedly resided. Susan Stewart and Joseph Begalla were thereafter voluntarily dismissed from the suit without prejudice. On September 15, 1998, Malagon filed motions for default against Aboudraah and Chahda. Defaults were entered against both individuals the next day. Malagon filed a motion for entry of a final judgment against them on November 3, 1998. On November 13, 1998, the trial court entered a final judgment for damages against Aboudraah, Chahda and Tartus in the amount of $267,216.83.
Aboudraah and Chahda moved to vacate the default final judgment on the ground that Malagon had failed to allege any wrongdoing on their part individually and that the note sued on was a corporate debt. They also alleged that service on Aboudraah was insufficient because his ex-wife, Chahda, had been served at her home. Finally, they alleged that the trial court should treat them with leniency since they had not mastered the English language and had not fully comprehended the nature of their legal obligations.
In support of their motion to vacate the default final judgment, Aboudraah and Chahda filed an affidavit of Aboudraah in which he alleged that he had not been personally served with process. Malagon filed a response in which he alleged that Aboudraah and Chahda had failed to establish excusable neglect and a meritorious defense and that they had failed to act with due diligence upon discovery of the default.
We affirm. After a default judgment has been entered, it is the defaulting party's burden to establish by clear and convincing evidence that service was invalid. Dysart v. An Ultimate Pool Service & Repair, Inc., 536 So.2d 387 (Fla. 3d DCA 1989). They failed to do so in this case. The process server's affidavit reflects that he served Aboudraah by serving a "resident of the same household over the age of 15 by delivering a true copy and explaining the contents...." Aboudraah responded by affidavit stating, "At the time that process was served on my ex-wife according to the process server's affidavit, I was out of the country on business for an extended time." But notably lacking from this affidavit is an allegation that Aboudraah did not reside at the home of his ex-wife at the time service of process was effected. It is precisely because one of the residents may be away from the residence that substitute service of process is available. Unless we are willing to hold that any time one takes a business trip, he or she abandons his or her residence, this is simply inadequate to rebut the process server's return. It should be noted that the final judgment *81 was mailed to Chahda and Aboudraah at the same address as the original summons and the subpoena duces tecum in aid of execution was served on Chahda for herself and also for Aboudraah as a person over the age of 15 residing in the same shared residence although a different residence than the one at which original service was effected. Although Chahda failed to respond to the subpoena, Aboudraah did appear and did not contest service.
We also agree with the trial judge in regard to the default against Chahda, who was properly served. Although she alleged that she "lacked a mastery of the English language and [was] unaware of [her] legal rights," she was listed as a director of Tartus Group, Inc. which received Malagon's $200,000 and was listed as its resident agent. Further, she was served individually and as "resident agent" of Tartus Group, Inc. It is the role of the resident agent to accept service of process. She willingly accepted this role. Concerning her lack of "mastery of the English language," it should be noted that the process server represents that he explained the contents of the summons to her. That would include the language: "Each defendant is required to serve written defenses to the complaint ... within 20 days after the service of this summons ... If a defendant fails to do so, a default will be entered against the defendant for the relief demanded in the complaint." "Mastery" of the English language is a broad concept. There are native born Americans with a college degree who have not mastered the English language. The question is not whether Chahda may on occasion split an infinitive; the question is whether she was capable of understanding the process server's instruction, and the written notice contained in the summons, that she was being served with a complaint for herself, her former husband, and the corporation for which she was resident agent and that an answer was required within 20 days. Nothing in this record suggests that she lacked this capacity. Neither Aboudraah nor Chahda identified any excusable neglect which prevented them from answering the complaint other than Aboudraah indicating that Chahda did not advise him about the summons.[1] There is no indication as to why she did not notify Aboudraah nor is there any explanation as to why she did not respond herself. Moreover, neither Aboudraah nor Chahda set forth any meritorious defense. See Moreno Construction, Inc. v. Clancy & Theys Construction Co., 722 So.2d 976 (Fla. 5th DCA 1999).
AFFIRMED.
W. SHARP, J., concurs.
DAUKSCH, J., dissents without opinion.

ON MOTION FOR REHEARING
COBB, J.
Chahda has moved for rehearing asserting that this court's decision of August 18, 2000 overlooked the fact that Malagon's complaint failed entirely to allege any basis for her personal liability on the promissory note. We grant rehearing solely to address this issue.
A default judgment should be set aside where the complaint fails to state a *82 cause of action. Becerra v. Equity Imports, Inc., 551 So.2d 486 (Fla. 3d DCA 1989). While Malagon asserts that this claim is not reviewable because it is raised for the first time on appeal, Abrams v. Paul, 453 So.2d 826 (Fla. 1st DCA 1984), the contention was raised in the motion to vacate default judgment.
In alleging Chahda's personal liability as one of the dissolved corporation's last known directors, Malagon simply referred to section 607.1421(4), Florida Statutes which reads:
A director, officer, or agent of a corporation dissolved pursuant to this section, purporting to act on behalf of the corporation, is personally liable for the debts, obligations, and liabilities of the corporation arising from such action and incurred subsequent to the corporation's administrative dissolution only if he or she has actual notice of the administrative dissolution at the time such action is taken; but such liability shall be terminated upon the ratification of such action by the corporation's board of directors or shareholders subsequent to the reinstatement of the corporation under ss. 607.1401-607.14401.
The record reflects that Tartus Group, Inc. had been administratively dissolved in 1995. Under section 607.1421(4), Chahda is personally liable for Tartus' debts, obligations and liabilities if she "purport[ed] to act on behalf of the corporation" and had actual notice of the administrative dissolution. The complaint, however, contains no allegations of ultimate fact indicating that Chahda purported to act on behalf of the dissolved corporation in connection with execution of the note. Rather, the complaint alleges that Aboudraah was given $200,000 in consideration for the note. Absent additional allegations, the complaint failed to state a cause of action for personal liability against Chahda and this deficiency was not curable by entry of the default judgment. The trial court erred in denying the motion to vacate the default judgment as to Chahda. Accordingly, the final judgment against Chahda is REVERSED.
W. SHARP and SAWAYA, JJ., concur.
NOTES
[1] As then Judge Grimes stated for the court in Barnett Bank of Clearwater, N.A. v. Folsom, 306 So.2d 186, 188 (Fla. 2d DCA 1975):

Since compliance [with the substitute service provision] is a valid method of acquiring jurisdiction over a defendant, substantial legal uncertainty would result if defendants were later permitted to set aside the judgment simply by showing that they never had knowledge of the process.
The law requires a showing of excusable neglect which was not shown in this case.